IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN W. MEYER,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Case No. 08 C 0599
　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Judge Virginia M. Kendall
　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
UNITED AIRLINES, INCORPORATED,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)

**MEMORANDUM OPINION AND ORDER**

Plaintiff John W. Meyer ("Meyer") sued his employer, United Airlines, Incorporated ("United"), claiming that United: (1) retaliated against him for using leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (2) interfered with his substantive rights under the FMLA; and (3) retaliatorily discharged him under Illinois common law for complaining internally that United's maintenance procedures violated FAA safety regulations. Pursuant to Fed. R. Civ. P. 12(b)(6), United brings this Motion to Dismiss Count III of Meyer's Complaint. United argues that the express preemption clause of the Federal Airline Deregulation Act ("FADA"), 49 U.S.C. § 41713, preempts Meyer's retaliatory discharge claim. Additionally, pursuant to Fed. R. Civ. P. 12(e), United requests a more definite statement as to Meyer's Count II. For the reasons stated, this Court denies United's Motion to Dismiss Count III and grants United's Motion for a More Definite Statement as to Count II.

1

## PLAINTIFF'S ALLEGATIONS

United, a major international airline, employed Meyer as an aircraft mechanic. (Compl. ¶¶ 1-4.)[1] His duties included performing safety inspections of United's aircraft. (Compl. ¶ 60.) In October 2003, Meyer notified United of his need for FMLA leave to tend to his own serious health condition. (Compl. ¶ 7.) On March 16, 2004, United tendered FMLA papers to Meyer and requested medical certification of his condition. (Compl. ¶8.) Meyer's physician completed the medical certification, which noted that Meyer would require intermittent FMLA leave for conditions such as severe migraines, diverticulitis and esophageal reflux, and Meyer tendered the certification to United's staff physician, Dr. McGuffin. (Compl. ¶¶ 10-11.) Dr. McGuffin disagreed with Meyer's physician about the amount of intermittent leave Meyer would require, but performed no diagnostic tests or physical exams, and did not provide an independent opinion as to the amount or extent of intermittent leave Meyer would require to treat his conditions. (Compl. ¶¶ 12-13.) Additionally, United did not obtain second or third medical opinions, and it did not indicate that the medical certification contained any deficiencies. (Compl. ¶ 14, 17.) Later, United disciplined Meyer for the time he took off from work. (Compl. ¶ 18.)

In June 2005, Meyer informed United that he would again require intermittent FMLA leave to care for his pregnant wife who suffered from gestational diabetes. (Compl. ¶ 19.) On July 26, 2005, Meyer turned over a request for medical certification, but United's physician was unavailable to certify the paperwork. (Compl. ¶ 21.) On September 6, 2005, a United physician, Dr. Rosi, completed the certification form and returned it to Meyer, and United retroactively certified Meyer for FMLA leave for the period of July 18, 2005 through September 10, 2005. (Compl. ¶¶ 23-24.)

---

[1] Citations to Meyer's "First Amended Complaint" have been abbreviated to "Compl. ¶ ___."

However, United subsequently disciplined him for time that he took off. (Compl. ¶ 25.) On January 27, 2006, United terminated Meyer for the stated reason of "lack of dependability." (Compl. ¶ 27.)

Meyer alleges that United failed to advise him with respect to his rights under the FMLA, failed to respond to his requests made pursuant to the FMLA, substantially interfered with the exercise of his FMLA rights, restricted him in the use of his time while on FMLA leave, harassed him for exercising his FMLA rights, and ultimately retaliated against him for exercising his FMLA rights by disciplining and terminating him. (Compl. ¶¶ 29-46.)

Meyer also alleges that United terminated him in retaliation for notifying his supervisors that certain United maintenance procedures violated FAA safety regulations. (Compl. ¶ 61, 63.) When Meyer found defects in aircraft during his safety inspections, he had responsibility for correcting them before the end of his shift. (Compl. ¶ 62.) Joseph Moser, his supervisor, instructed Meyer to not make a record of the defects that he could not correct before the end of his shift. (Compl. ¶¶ 63-64.) Meyer thought that such conduct violated FAA safety regulations, because he believed he had a duty to record all defects he discovered regardless of whether he could fix them before the end of his shift. (Compl. ¶ 63, 64.) He informed his supervisors of these beliefs but they took no corrective action. (Compl. ¶ 65.) Moran then threatened him and assigned him additional clean-up duties. (Compl. ¶ 65.) He alleges that after his complaints, United took no corrective action, the violations continued, and he suffered adverse job actions, including harassment and termination. (Compl. ¶ 78.)

## **STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See*

*Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

I. United's Motion to Dismiss Count III

As previously noted, Count III of Meyer's complaint alleges retaliatory discharge under Illinois common law. Meyer alleges that United terminated him because he complained to United supervisors that the airline's aircraft maintenance policies did not comport with FAA regulations; and therefore, its stated reason for his termination is pretextual. United counters that FADA's Whistleblower Protection Program ("WPP") preempts Meyer's state retaliatory discharge claim related to air safety. Alternatively, United argues that FADA preempts Meyer's state retaliatory discharge because the claim relates to the services of United, an air carrier. While the Seventh Circuit has addressed several cases related to FADA preemption of state laws, it has not yet decided whether FADA, as amended by the WPP, preempts state retaliatory discharge claims related to air safety against airlines.

In 1978, Congress enacted FADA in order to allow competitive market forces "to provide efficiency, innovation, and low prices; and, to decide on the variety and quality of, and determine

4

prices for, air transportation services." 49 U.S.C. § 40101(a)(12). To ensure that the States would not undo federal deregulation with regulation of their own, FADA included an express preemption provision. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378-79 (1992). FADA's preemption provision provides:

> Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). Based on the express language of the statute, FADA "expresses a broad preemptive purpose." *Morales*, 504 U.S. at 383. Therefore, "States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995). As a result, to the extent that state laws relate to a price, route, or service of an air carrier, FADA preempts state laws of general applicability that do not even specifically address the airline industry, as well as state laws that are consistent with FADA's substantive requirements. *See Morales*, 504 U.S. at 384; *see also Wolens*, 513 U.S. at 222.

In 1999, Congress amended the FADA to include the WPP. *See* 49 U.S.C. § 42121. In relevant part, the WPP provides:

> No air carrier or contractor or subcontractor of an air carrier may discharge an employee . . because the employee . . . provided . . . to the employer . . . information relating to any violation or alleged violation of any order, regulation, or standard of the [FAA] or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States . . . .

49 U.S.C. § 42121. The Seventh Circuit has not yet addressed whether the WPP preempts state retaliatory discharge causes of action to the extent that the claims relate to airline safety. The appellate courts that have considered the issue have come to divergent conclusions. *See Gary v. Air Group, Inc.*, 397 F.3d 183 (3d. Cir. 2005) (holding that the WPP does not preempt state law

5

whistleblower claims when a pilot reported that another pilot may not have the proper qualifications to fly); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir. 2003) (holding that the WPP does not preempt state law whistleblower claims when a maintenance employee reports a single FAA violation after it occurred); *Botz v. Omni Air Int'l, Inc.*, 286 F.3d 488 (8th Cir. 2002) (holding that the WPP preempts state law whistleblower claims related to air safety). Therefore, this Court must determine the preemptive effect, if any, of the WPP with respect to state retaliatory discharge claims that relate to air safety.

A. *Preemptive Effect of FADA's WPP*

With any preemption, "the ultimate touchstone" is Congressional purpose. *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 189 F.3d 633, 637 (7th Cir. 1999). "[W]here federal law is said to bar state actions in fields of traditional state regulation . . . [the Court works with] the assumption that the historic powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (internal quotations omitted). The Court begins its analysis with the plain wording of the express preemption clause because it is the wording that best reflects Congressional intent. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993), *superseded on other grounds by statute,* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-52, 121 Stat. 266 (2007), ("If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent."). The Court should not lightly infer preemption in the area of employment law, because it "falls within the traditional police power of the

State." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987); *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994).

In *Botz*, the Eighth Circuit held that the WPP expanded FADA preemption with respect to whistleblower claims. In that case, a flight attendant worked an assignment that she believed violated federal safety regulations because the flight required her to violate a restriction that limited a flight attendant's duty period to no longer than twenty hours. *Botz*, 386 F.3d at 490. After she reported the violation to her employer and refused the same flight assignment a few months later, the airline terminated her. *Id.* She filed suit against the airline under the Minnesota whistleblower statute, but the district court dismissed the claim on preemption grounds. *Id.* On appeal, the Eighth Circuit reasoned that "[t]he fact that the WPP now provides a comprehensive scheme for protecting the precise sort of air safety-related conduct Botz engaged in here is . . . powerful evidence of Congress's clear and manifest intent to pre-empt state-law whistleblower claims related to air safety." *Botz*, 286 F.3d at 496. Therefore, according to the Eighth Circuit, "the WPP makes it unmistakable that [state whistleblower claims related to air safety] are preempted." *Id.* at 498.

Subsequently, the Eleventh Circuit and the Third Circuits agreed that *Botz* went too far in expanding ADA preemption. *See Gary*, 397 F.3d at 190; *Branche*, 342 F.3d at 1263 n.9. In *Branche*, an aircraft safety inspector reported to the FAA that when a plane landed with one of its engines running at a temperature that exceeded FAA guidelines, two under-qualified maintenance workers ran a risky diagnostic test on the engine by running the plane at high power to determine its airworthiness. *Branche*, 342 F.3d at 1251-52. The airline terminated the safety inspector once it learned that he reported the incident to the FAA. *Id.* at 1252. The inspector sued the airline under Florida's Whistleblower Act, but the district court dismissed the action on preemption grounds. *Id.*

7

On appeal, the Eleventh Circuit found that the WPP did not expand the scope of FADA preemption, noting "[i]n deciding preemption, whether before or after the enactment of the WPP, the question [the court] must answer remains the same: Is the state law in question 'related to' air carrier 'services'?" *Id.* at 1264. The Eleventh Circuit noted that under FADA's WPP provision, "it is the specifics of the retaliation claim . . . that appropriately determine preemption. Thus, retaliation claims brought under state whistleblower statutes must be evaluated on a case-by-case basis to determine the connection between the action in question and airline services." *Id.* at 1263 n.9.

In *Gary*, Ray Gary, a pilot who flew private jets for a small charter service, expressed his concerns that a newly-hired pilot did not have the proper qualifications, and therefore was unsafe and unqualified to pilot a commercial charter plane. *Gary*, 397 F.3d at 185. A few hours later, the company terminated Gary, and he sued under New Jersey's whistleblower act, the Conscientious Employee Protection Act. *Id.* In finding that the WPP did not preempt Gary's state claims, the Third Circuit found that "the WPP did not alter the [F]ADA analysis in any meaningful way" because the WPP does not expressly preempt state law whistleblower claims that relate to air safety, and because courts should not lightly infer preemption in the employment context, an area that falls within the traditional police powers of the states. *Id.* at 190.

This Court finds that FADA's WPP provision does not preempt all state law retaliatory discharge claims that relate to air safety. First, FADA's express preemption language does not state that it preempts state retaliatory discharge claims that relate to air safety. Rather, as it did before enactment of the WPP, the statute continues to expressly state that it preempts state laws "related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b). The WPP amendment to FADA did not change the language of § 41713 to include retaliation claims relating to air safety, and

8

therefore the express language of FADA's preemption provision does not support expanded preemption of all retaliatory discharge claims relating to air safety. The Eighth Circuit found powerful evidence of a clear Congressional intent to preempt state-law whistleblower claims related to air safety based upon the fact that Congress created the WPP, a comprehensive scheme for protecting air safety-related reporting. *See Botz*, 286 F.3d at 496. However, without express preemption language, this Court can detect no such clear and manifest intent. *See Gary*, 397 F.3d at 190 ("[W]e agree with the Eleventh Circuit's conclusion [in *Branche*] that Congress' silence renders its intent 'ambiguous' at best and thus should not serve as a basis for expanding [F]ADA preemption."). Second, this Court remains hesitant to infer preemption, particularly when employment discrimination actions fall within the traditional police power of the States. *See id.* (*quoting Branche*, 342 F.3d at 1259). The WPP did not create an air safety exception to the requirement that a court "must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes or services." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996). Therefore, this Court adopts an interpretation of the WPP that remains true to the text of FADA: a cause of action under the WPP preempts a state retaliatory discharge cause of action when the claim relates to airline prices, routes, or services. Accordingly, this Court must now consider whether Meyer's claim relates to airline services to determine if FADA preempts his claim.

*B. FADA Preempts Meyer's Retaliatory Discharge Claim*

Two requirements for FADA preemption of a state law exist: "(1) [a] state must 'enact or enforce' a law that (2) 'relates to' airline [prices],[2] routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Id.* at 1432. "State common law counts as an 'other provision having the force and effect of law' for purposes of" preemption analysis under § 41713(b)(1). *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000); *see also Wolens*, 513 U.S. at 233. With respect to the second requirement, courts have broadly interpreted the phrase "related to" to mean that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under 49 U.S.C. § 41713(b)." *Morales*, 504 U.S. at 384. Therefore, "a claim is preempted if *either* the state rule expressly refers to air carriers' rates, routes, or services, or application of the state's rule would have a significant economic effect upon them . . . ." *United*, 219 F.3d at 609 (emphasis in original). As previously mentioned, courts examine the facts underlying the dispute to determine if the claims relate to airline prices, routes or services. *See Travel All* at 1433. The Seventh Circuit has also adopted a broad definition of "services" under the statute:

> "[s]ervices generally represent a bargained-for or anticipated provision of labor from one party to another . . . . [This] leads to a concern with the contractual arrangement between the airline and the use of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself."

---

[2] The second requirement in *Travel All* is that the law must "'relate to' airline rates, routes, or services . . . ." *Travel All*, 73 F.3d at 1432. In *Wolens*, the Supreme Court observed that Congress, in reenacting Title 49 of the U.S. Code, revised FADA's preemption statute, which previously read: "[N]o State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . . ." *Wolens*, 513 U.S. at 222-23. However, "Congress intended the revision to make no substantive change." *Id.* at 223 n.1. Accordingly, this Court will continue to apply the requirements of *Travel All*, merely substituting the word "prices" for "rates".

*Id.* at 1433. Despite the broad interpretation of FADA's preemption provision, courts have recognized that some state actions may affect airline prices, routes or services "is too tenuous, remote, or peripheral a manner to have preemptive effect." *Morales*, 504 U.S. at 390 (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see also Travel All*, 73 F.3d at 1431.

First, because the claim arises under Illinois common law, Meyer's cause of action qualifies as a provision having the force and effect of law under § 41713(b). The more difficult question is whether his claim relates to the services of United, an air carrier. Under the Seventh Circuit's approach, "'services' include all elements of the air carrier service bargain." *Travel All*, 73 F.3d at 1434. Meyer alleges that his retaliatory discharge claim relates to United's maintenance practices because permitting state retaliatory discharge claims to proceed against air carriers could have a significant prohibited economic effect on airlines.

Although that assertion is made, a more specific examination reveals that the impact would be tenuous. For example, Meyer alleges that he was retaliated against because he spent more time doing his airplane inspections than others. In order for his employment case to have an impact on the services of United, however, he would need to assert that the result of his case would have more than a tenuous impact on Defendant. If the Court were to assume, for example, that he correctly shows that he was retaliated against due to his more exacting work on the aircraft, what impact would that have on United? In the first instance, the back pay, wages, and damages that could come from one employee's employment case on the air carrier can only be described as minimal. In the second instance, even if he were to prove that he was retaliated against for that work, that would not automatically require United to change its practices in any manner regarding the amount of time that a particular employee spends on a particular aircraft. In truth, without injunctive relief being sought

11

(which plaintiff does not seek here), the case would have no impact on the practices of United because no finding would be made regarding the way in which an aircraft should be maintained and serviced. The focus of the trial would be on whether United retaliated against him for that work. Here, Meyer does not allege that United should be enjoined from requiring maintenance workers to work only a specific amount of time on each aircraft. The result that he is seeking, re-employment or damages for his discharge, do not directly relate to the manner in which United services its planes nor would that result have an impact on United other than in a remote and peripheral way. Because of this tenuous connection the FADA does not preempt Meyer's state common law retaliatory discharge claim.

II.     United's Motion for a More Definite Statement as to Count II

Under Fed R. Civ. P. 12(e), a party may move for a more definite statement if the pleading is so vague or ambiguous that the party cannot reasonably prepare a response. Whether to grant a motion for a more definite statement falls within the discretion of the district court. *See Hummel v. Wells Petroleum Co.*, 111 F.2d 883, 886 (7th Cir. 1940). In general, federal pleading follows the "notice pleading" standard. *See, e.g., Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2). However, under Fed . R. Civ. P. 9(f), "[f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." "[T]he reason for 'averments of time and place' is to make ascertainable whether a cause of action is barred by the statute of limitations, and that where so shown a complaint is properly dismissed on motion." *Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir. 1954). When a plaintiff's allegations span several years, some of which fall outside of the statute of limitations period, courts may grant a motion for a more definite statement regarding time. *See Bankest Imports,*

*Inc. v. ISCA Corp.*, 717 F.Supp. 1537 (S.D. Fla. 1989); *see also Nelson v. Long Lines Ltd.*, No. C02-4083-MWB, 2003 WL 21356081, at *6 (N.D. Iowa June 11, 2003).

In this case, the allegations that form the basis of Meyer's FMLA claims begin in October 2003. Because Meyer alleges that United willfully violated his rights under the FMLA, a three year statute of limitations period applies. *See* 29 U.S.C. § 2617(c). Therefore, any claims for interference with his substantive rights under the FMLA that occurred before May 28, 2005 would be time-barred. Count II of Meyer's complaint describes seven general ways that United interfered with his rights under the FMLA, spanning from October 2003 through January 27, 2006. (Compl. ¶¶ 7, 27, 56.) However, the allegations that form Count II do not claim when each of the different violations of the FMLA became ripe. Accordingly, with respect to Count II, Meyer's complaint is so vague or ambiguous that United cannot form a response. The allegations contained in Count II of Meyer's complaint could have occurred at any time between October 2003 and January 27, 2006. Under *Kincheloe*, United has a right to ascertain whether it has a valid statute of limitations defense to Meyer's allegations. Therefore, United's Motion for a More Definite Statement as to Count II is granted.

## CONCLUSION AND ORDER

For the reasons stated herein, United's Motion to Dismiss Count III is denied and its Motion for a More Definite Statement as to Count II is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: 12/18/08